SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
mskapik@skapiklaw.com, gskapik@skapiklaw.com
bberkley@skapiklaw.com, mfalkenstein@skapiklaw.com
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiffs DEREK MOYA and C.M.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| DEREK WAYNE MOYA, an individual; C.M., a minor, by and through his guardian ad litem, Derek Moya; <br><br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF RIVERSIDE; KAREN WILSON, an individual; MAYSOON DAHDUL, an individual; CARLA MARTIN, an individual; DENISE STOOPS, an individual STEPHANIE ANN STANLEY, an individual; DOES 1-10, inclusive <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. VIOLATION OF 42 U.S.C. § 1983 – COUNT I <br> 2. VIOLATION OF 42 U.S.C. § 1983 – COUNT II <br> 3. VIOLATION OF 42 U.S.C. § 1983 – *MONELL* CLAIM <br> 4. NEGLIGENCE <br> 5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS <br> 6. CONVERSION <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs DEREK MOYA, an individual, and C.M., a minor, by and through his guardian ad litem Derek Moya ("Plaintiffs") allege as follows:

## JURISDICTION AND VENUE

1.    The jurisdiction of this Court is invoked under 28 U.S.C. § 1331 in this action under 31 U.S.C. Section 3730(h). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the subject matter of the Plaintiffs' state law claims on the grounds that these claims are so related to the claims within this Court's original jurisdiction that they form the same case or controversy under Article III of the United States Constitution.

2.    Venue of this action is proper in this judicial district by virtue of 28 U.S.C. § 1391 because, among other things, the acts complained of occurred in this judicial district and because one or more of the Defendants reside in this judicial district and all of the Defendants reside in California.

## PARTIES

3.    At all times relevant, Plaintiff DEREK MOYA ("MOYA") was an individual residing in the County of Riverside, California. MOYA is the biological father of Plaintiff C.M.

4.    At all times relevant, Plaintiff C.M. was a minor individual residing in the County of Riverside, California. C.M. is represented in this action by his biological father and guardian ad litem, Derek Moya.

5.    At all times relevant, Defendant COUNTY OF RIVERSIDE ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. At all times relevant, the COUNTY was the employer of *** and DOES 1-10, inclusive, who were various employees, agents, supervisorial officers, managerial employees, and/or policy making employees of the COUNTY's Department of Child and Family Services.

6.      At all times relevant, Defendant STEPHANIE STANLEY ("STANLEY") was an individual residing in the County of Riverside. STANLEY is the biological mother of Plaintiff C.M.

7.      At all times relevant, Defendant KAREN WILSON ("WILSON") was an employee of the COUNTY OF RIVERSIDE as a member of the COUNTY's Department of Public Social Services ("DPSS").

8.      At all times relevant, Defendant MAYSOON DAHDUL ("DAHDUL") was an employee of the COUNTY OF RIVERSIDE as a member of the COUNTY's DPSS.

9.      At all times relevant, Defendant CARLA MARTIN ("MARTIN") was an employee of the COUNTY OF RIVERSIDE as a member of the COUNTY's DPSS.

10.      At all times relevant, Defendant DENISE STOOPS ("STOOPS") was an employee of the COUNTY OF RIVERSIDE as a member of the COUNTY's DPSS. Collectively, WILSON, DAHDUL, MARTIN and STOOPS are known hereinafter as the "COUNTY DEFENDANTS."

11.      At all times relevant, DOES 1-10, inclusive, were duly authorized employees and agents of the COUNTY, who were acting under color of law within the course and scope of their respective duties as employees of the COUNTY's Department of Child and Family Services ("DCFS").

12.      In doing the acts and failing and omitting to act as hereinafter described, the COUNTY DEFENDANTS and DOES 1-10, inclusive, were acting on the implied and actual permission of the COUNTY.

13.      At all times relevant mentioned herein, each and every COUNTY defendant was the agent of each and every other COUNTY defendant and had the legal duty to oversee and supervise the hiring, training, conduct, and employment of each and every other COUNTY defendant.

14.      The true names of defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will

1  seek leave to amend this complaint to identify the true names and capacities of these

2  defendants when they have been ascertained. Each of the fictitiously named defendants

3  is responsible in some manner for the conduct and liabilities alleged herein.

4  **FACTUAL ALLEGATIONS**

5      15.    Plaintiff DEREK MOYA ("MOYA") was in a relationship with Defendant

6  STEPHANIE STANLEY ("STANLEY") from September 2013 until approximately

7  November, 2021. MOYA separated from STANLEY after an incident where

8  STANLEY committed acts of domestic violence upon MOYA in front of their child,

9  C.M., along with one of STANLEY's children from a previous relationship, C.S.

10     16.    On November 10, 2021, STANLEY attacked MOYA during a domestic

11  dispute, causing physical harm to both MOYA and her older son from a previous

12  relationship. C.M. witnessed the argument and the abuse that STANLEY inflicted on

13  MOYA and her other son. STANLEY fled the scene prior to law enforcement arriving.

14  MOYA was granted an Emergency Protective Order ("EPO") for both C.M. and

15  STANLEY's other son, and was granted temporary custody of both boys. STANLEY

16  was not allowed to have any visitation with the children while the EPO was in place.

17     17.    STANLEY attempted to bring a secondary referral to the Child Abuse

18  Hotline on November 22, 2021, alleging abuse by MOYA arising from the November

19  10, 2021 incident; however, MOYA and both of the children, including C.M., denied

20  the allegations. This referral was completely fabricated by STANLEY who made false

21  claims that MOYA was attempting to "groom" her son from a previous relationship,

22  C.S. STANLEY further fabricated the incident, telling multiple lies naming MOYA as

23  the aggressor and attempting to fabricate evidence against him to influence the

24  COUNTY's investigation. STANLEY further lied by claiming that MOYA had hit her

25  during the altercation, which was untrue. The investigation into this incident was closed

26  as to both STANLEY and MOYA, with allegations of general neglect found to be

27  substantiated against STANLEY, and the allegations of general neglect found to be

28  unsubstantiated against MOYA. The investigation by Menifee police revealed that

STANLEY was the sole aggressor during the incident and was the only person to be physically violent.

18.    During the investigation of the November 10, 2021 incident, it was also revealed that there was an active Bench Warrant for STANLEY, originally issued on March 17, 2016 (Case No. RIM1518145).

19.    Despite the fact that the allegations of general neglect were substantiated against STANLEY, the COUNTY's DCFS agents, including WILSON and DAHDUL found that STANLEY was still able to safely maintain care of the children. This finding was made despite numerous objective facts that would warn a reasonable social worker that STANLEY was not safe for C.M. to be around and that she had been neglectful and actively harmful towards C.M.

20.    On information and belief, STANLEY lied and falsified information with regard to this report to the COUNTY DEFENDANTS. The COUNTY DEFENDANTS knew or should have known that this report was falsified and yet failed to take reasonable steps to protect C.M.

21.    On or about August 2022, STANLEY was charged with domestic violence and child endangerment.

22.    On April 22, 2023, MOYA reported another instance of neglect by STANLEY. MOYA reported at this time that C.M. had disclosed that he was unable to sleep in his bed while at STANLEY's house because the bed was full of dog feces. STANLEY reportedly owned ten dogs at this time, all of whom stayed in the house. C.M. told MOYA that he was forced to sleep on the couch while at STANLEY's home. MOYA also learned that C.S. was driving C.M. to school without a license and that there was the afterbirth of a dog left in the corner of C.M.'s bedroom. On information and belief, no investigation was done into these allegations and C.M. was allowed to continue to visit with STANLEY despite the obvious neglect.

23.    During this period as well, MOYA made reports that STANLEY was further neglecting C.M. by allowing him to be driven around by drunk teenagers and

that C.M. missed over thirty (30) days of school while in STANLEY's care. When MOYA reported this neglect by STANLEY to the COUNTY and COUNTY DEFENDANTS, he was subjected to a drug test the following day by the COUNTY, COUNTY DEFENDANTS, and DOES 1-10, inclusive. STANLEY was not subjected to a drug test. Moreover, on information and belief, in further retaliation for MOYA reporting the abuse, STANLEY lied to the COUNTY DEFENDANTS and DOES 1-10, inclusive, and alleged that MOYA had arrived to her home and killed a rabbit, which was a complete fabrication. When MOYA brought up this complete fabrication to one of the DOE social workers, he was told that if he kept calling CPS to report neglect by STANLEY that he would potentially lose all custody of C.M.

24.     Further, during this period, when one of the COUNTY DEFENDANTS and/or DOES 1-10, inclusive, would visit STANLEY's home, there was at least one report of a "strong smell of urine from the front door" of STANLEY's home.

25.     On information and belief, MOYA made multiple reports to the COUNTY regarding abuse and neglect by STANLEY against C.M. Despite these reports, which were supported by evidence, the COUNTY failed to investigate these reports and did not protect C.M. from the abuse and neglect that C.M. was suffering while he was in the care of STANLEY. The direct result of this failure and abdication of duty by the COUNTY and COUNTY DEFENDANTS was that C.M. and MOYA suffered pain, suffering, and emotional distress.

26.     On November 30, 2023, STANLEY prepared a false and fraudulent report against MOYA with the COUNTY's Department of Public Social Services, claiming that MOYA had hit C.M., caused C.M. to burn his cheek, and had allowed C.M. to sustain bug bites on his body. STANLEY knew or should have known that these allegation were false yet still submitted them in an intentional act to interfere with the relationship between MOYA and C.M.

27.     In fact, all of the harm to C.M. that STANLEY complained about occurred in her care. When MOYA picked up C.M. from STANLEY's care earlier that same

week, C.M.'s cheek was red; he had bug bites on his hand, neck, side, and stomach; and a bump and an abrasion on his forehead. C.M. told MOYA that he sustained these injuries while at a waterpark with STANLEY. MOYA had not seen C.M. for at least a week prior to picking him up, and the wounds were fresh when MOYA picked up C.M.

28.    Despite this, STANLEY coached C.M. to blame MOYA for the injuries he suffered so as to better substantiate her fabricated claims against MOYA and to disrupt the relationship between MOYA and C.M. STANLEY mentally and emotionally manipulated C.M. in order to get him to lie about how his injuries occurred so that MOYA would be blamed for the injuries.

29.    STANLEY further fabricated evidence when she filed a false report of abuse with the COUNTY's Sheriff's Department, alleging that all of C.M.'s injuries were caused by MOYA, despite the fact that all of the injuries occurred while C.M. was in STANLEY's care. STANLEY then took C.M. out of school to further prevent him from being in contact with MOYA. STANLEY filed this report with evidence that she coerced from an unrelated minor and other witness who STANLEY convinced to submit false documentation and declarations in order to support STANLEY's fraudulent criminal complaint against MOYA.

30.    On or about November 30, 2023, C.M. was removed from MOYA's care and placed with STANLEY.

31.    On information and belief, this removal was based on false reports prepared by the COUNTY DEFENDANTS. The COUNTY DEFENDANTS knew or had reason to know that these reports were false, and that STANLEY had manipulated information in order to gain control over C.M. and cause harm to both C.M. and MOYA. Despite this knowledge, the COUNTY DEFENDANTS initiated and continued proceedings that caused C.M. to be removed from the care of MOYA.

32.    Despite the fact that MOYA had not abused C.M. and had in fact been reporting abuse by STANLEY of C.M., C.M. was allowed to remain in STANLEY's care for two months, with no contact between MOYA and C.M. The COUNTY

DEFENDANTS were aware that it was STANLEY, not MOYA who was abusing C.M., yet continued to cover for her and allow her unfettered access to C.M. during this time, while at the same time restricting MOYA's access to C.M. The COUNTY DEFENDANTS did this intentionally and maliciously because they knew that STANLEY was abusing and causing harm to C.M. and wanted to retaliate against MOYA for reporting the abuse that C.M. was suffering.

33.    During this period of time when C.M. was in the sole custody of STANLEY, he was exposed to extreme abuse and neglect by STANLEY. STANLEY was not properly equipped to care for C.M. and failed to provide him with basic needs, causing him severe pain, suffering, and emotional distress. Moreover, STANLEY was allowing her boyfriend to live with her at the time, who had active felony charges. C.M. was exposed to this dangerous person while he was forced to live only with STANLEY. The COUNTY DEFENDANTS knew or should have known that this was not an appropriate placement for C.M. due to STANLEY's repeated instances neglect and the presence of a registered felon in the house, yet continued to allow C.M. to be exposed to serious danger and harm in violation of his constitutional rights and their duties under the law.

34.    On January 25, 2024, the COUNTY received a 10-day referral alleging general neglect of C.M. by STANLEY.

35.    On February 1, 2024, MOYA was awarded primary custody of C.M. by the Riverside County Superior Court. MOYA had not seen C.M. since November 30, 2023 and had been entirely deprived of his relationship with C.M. during that time, in violation of his constitutional rights to familial relations.

36.    Despite Judge Lough's order granting MOYA visitation in mid-January, 2024, STANLEY went to C.M.'s school and submitted false statements and paperwork to the principal indicating that MOYA was not to be allowed to pick up C.M. from the school, despite MOYA having primary custody of C.M. When MOYA arrived at the school that day to pick up C.M., he was not allowed to pick up C.M. and was threatened

with arrest and intervention by the COUNTY's Sheriff's Deputies. MOYA attempted to explain that he was the primary parent and that he had custody of C.M., but he was ignored due to the lies, manipulation, and intentional conduct of STANLEY.

37. On February 29, 2024, STANLEY was arrested after she and her boyfriend took the child, C.S., to the home of another minor and encouraged him to start a fight. On information and belief, STANLEY also attempted to fight multiple other adults and minors. STANLEY was arrested for violations of California Penal Code § 182(a)(1), conspiracy to commit a felony, and California Penal Code § 273a(a), Child Endangerment. STANLEY was released from jail on March 1, 2024.

38. On March 4, 2024, STANLEY was notified that C.M. was to be entirely removed from her care and was to remain in the care of MOYA.

39. In the March 7, 2024 detention report, it was determined that "there is a substantial danger to the physical health of [C.M.] and [C.M. is] suffering severe emotional damage, and there are no reasonable means by which [C.M.]'s physical or emotional health may be protected without removing [C.M.] from the mother's physical custody."

40. During the period of April, 2023 through February, 2024, the COUNTY's Sheriff's Department had received 23 calls for service from STANLEY's home.

41. After MOYA was granted primary custody of C.M., STANLEY was ordered to pay child support to MOYA. The child support payments were to begin in May 2024, and the order is still active to the present day. To this date, STANLEY has failed to pay any child support to MOYA. STANLEY has not made a single payment despite being ordered by the court to do so.

42. Since MOYA and C.M. have been reunited, STANLEY has had no contact with C.M. STANLEY has not seen or contacted C.M. for nearly two years, is not involved in his life, and has not expressed any interest in reunifying with C.M. MOYA remains the primary caregiver for C.M. to this day, and both MOYA and C.M.

experienced significant trauma as a result of the conduct of STANLEY and the COUNTY DEFENDANTS.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF 42 U.S.C. § 1983 – COUNT 1

**(By Plaintiff C.M., a minor, by and through his guardian ad litem, Derek Moya, against the COUNTY DEFENDANTS and DOES 1 through 10, inclusive)**

43.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

44.    Plaintiffs are informed and believe and thereon allege that once the state assumes wardship or establishes dependency of a child, the state owes the child as part of that person's protected liberty interest for reasonable safety and minimally-adequate care under the Fourteenth Amendment. At all times applicable herein, said liberty interest and duty of the state was "clearly established" such that any reasonable social service practitioner, supervising social service practitioner, or other persons jointly acting under color of state law would know that children, such as Plaintiff C.M., should not be deprived of the right to live in situations where it is reasonably foreseeable that they would be protected from abuse and/or neglect and/or harassment by individuals. Likewise, it is reasonably foreseeable that this right is violated where, due to actions or inactions on behalf of said social services practitioners, a child is forced to live in a situation where it is reasonably foreseeable that they would be exposed to abuse and/or neglect and/or harassment by individuals.

45.    Specifically, WILSON knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, WILSON conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. WILSON knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to

create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to C.M.

46.    Specifically, DAHDUL knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, DAHDUL conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. DAHDUL knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to C.M.

47.    Specifically, STOOPS knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, STOOPS conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. STOOPS knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to C.M.

48.    Specifically, MARTIN knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, MARTIN conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. MARTIN knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to C.M.

49.    As described above, the COUNTY DEFENDANTS violated C.M.'s rights under the First, Fourth and Fourteenth Amendments to the United States Constitution by

failing to take reasonable steps to safeguard him from STANLEY and others after placing C.M. in great danger by giving STANLEY unfettered access to C.M.

50.    As a result of the conduct of the COUNTY DEFENDANTS, as described herein, C.M. was forced to endure great conscious pain and suffering as a result of the grossly negligent and reckless care of C.M. by the COUNTY DEFENDANTS and STANLEY, cultivating in significant physical injuries.

51.    As a direct and proximate result of the acts and omissions of the COUNTY DEFENDANTS, described above, C.M. has suffered and continues to suffer injuries as alleged  herein including but not limited to pain, humiliation, anxiety, mental anguish, emotional distress, and other general and special damages in an amount to be ascertained according to proof at trial. Plaintiff seeks general and special damages within the jurisdictional limits of this Court and seek them according to proof at trial. Plaintiff has incurred attorneys' fees and costs and will seek to recover them pursuant to 42 U.S.C. § 1988.

52.    The conduct of the COUNTY DEFENDANTS as described above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of C.M. and therefore warrants the imposition of exemplary and punitive damages as to the COUNTY DEFENDANTS and DOES 1-10, inclusive.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF 42 U.S.C. SECITON 1983 – COUNT II

### (By Plaintiff DEREK MOYA against Defendants the COUNTY DEFENDANTS and Does 1-10, inclusive)

53.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

54.    As described above, the COUNTY DEFENDANTS violated MOYA's rights and privileges under the Fourteenth Amendment to the United States Constitution.

55.    As a result of the wrongful conduct of the COUNTY DEFENDANTS described herein, MOYA was deprived of his right to familial association with his son, C.M.

56.    As a result of the wrongful conduct of the COUNTY DEFENDANTS as described herein, MOYA *actually and continually lost custody and control* of his son C.M. for an extended period of time.

57.    Specifically, WILSON knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, WILSON conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. WILSON knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to MOYA.

58.    Specifically, DAHDUL knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, DAHDUL conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. DAHDUL knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to MOYA.

59.    Specifically, STOOPS knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, STOOPS conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. STOOPS knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to

create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to MOYA.

60. Specifically, MARTIN knew or should have known that STANLEY was abusing and neglecting C.M. and was deliberately indifferent to this fact. On information and belief, MARTIN conspired with STANLEY to present false evidence to the family court, lie in delivered service logs, and concoct a sequence of events to allow STANLEY to arrest custody of C.M. from MOYA. MARTIN knew or should have known that STANLEY was unfit to have custody of C.M., and yet willingly agreed to create pretext by means of fabricated evidence to remove C.M. from MOYA's care and to place C.M. with STANLEY, causing harm to MOYA.

61. Furthermore, the continued separation of C.M. from MOYA by the COUNTY DEFENDANTS and the refusal of the COUNTY DEFENDANTS to otherwise permit MOYA to have reasonable contact and familial relations with C.M. when they knew that they had no evidence that MOYA had ever abused or neglected C.M. further violated MOYA's Fourteenth Amendment right to procedural due process.

62. The COUNTY DEFENDANTS were acting under color of law when they breached their duties to MOYA by placing C.M. and maintaining him in placement with STANLEY, a person known or who the COUNTY DEFENDANTS reasonably should have known had demonstrated an inability to provide proper and adequate care and did so without proper justification or excuse.

63. MOYA was forced to endure great conscious pain and suffering as a result of the wrongful acts and omissions by the COUNTY DEFENDANTS culminating in injuries and damages.

64. As a direct and proximate result of the wrongful acts and omissions of the COUNTY DEFENDANTS, MOYA has suffered and continues to suffer injuries as alleged herein including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, and other general and special damages in an amount to be ascertained according to proof at trial. Plaintiffs suffered general and special damages

within the jurisdictional limits of this court and seek them according to proof at trial. Plaintiffs have incurred attorneys' fees that they will seek to recover pursuant to 42 U.S.C. § 1988.

65.    The conduct of the COUNTY DEFENDANTS as described above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of MOYA and therefore warrants the imposition of exemplary and punitive damages as to the COUNTY DEFENDANTS and DOES 1-10, inclusive.

///

## THIRD CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. SECTION 1983 – *MONELL* CLAIM
### (By all Plaintiffs against Defendant COUNTY OF RIVERSIDE)

66.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

67.    Defendant COUNTY, including it's Department of Children and Family Services, is a "person" within the meaning of 42 U.S.C. § 1983 and therefore subject to *Monell* liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. The COUNTY and its policymakers and supervisors, and each of them, acted under color of state law when committing the acts and omission alleged herein, in violation of Plaintiffs' rights.

68.    Defendant COUNTY and any and all individuals in their official capacities who had supervisory and/or policy making authority (including, potentially, some or all of DOES 1-10, inclusive), had a duty to Plaintiffs at all times to establish, implement, and follow policies, procedures, customs, and/or practices (hereinafter referred to as "policy" or "policies") which provide the protections guaranteed Plaintiffs under the United States Constitution, including those under the Fourth Amendment and Fourteenth Amendment, to include, without limitation, Plaintiffs' liberty interests in reasonable safety and adequate care, the protection of the right to be free from governmental deception, trickery, fabrication of evidence, and suppression, concealment or destruction of evidence in juvenile dependency and other proceedings; and the right

to substantive and procedural due process. Said Defendants also had a duty to use reasonable care to select, assign, supervise, train, control, and review the activities of all their agents, officers, employees and those acting under them, including within the COUNTY's DCFS, so as to protect their constitutional rights; and to refrain from acting with the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected dependent children, including the Plaintiffs in the instant matter.

69.    Defendant COUNTY established and/or followed procedures, customs, and/or practices which were the moving force behind the violations of Plaintiffs' constitutional rights, including those under the Fourth Amendment and Fourteenth Amendment, by:

    a. The custom and/or practice of placing dependent children with parents known or suspected to be physically and/or emotionally abusive and/or neglectful and/or associated with persons known or suspected to be physically and/or emotionally abusive and/or neglectful.

    b. The custom and/or practice of maintaining dependent children in placement with parents known or suspected to be physically and/or emotionally abusive and/or neglectful and/or associated with persons known or suspected to be physically and/or emotionally abusive and/or neglectful.

    c. The custom and/or practice of placing dependent children with individuals who do not possess the training or experience to provide minimally adequate care and protection necessary to meet the needs of dependent children.

    d. By acting with deliberate indifference in implanting a practice of inadequate training and/or supervision, and/or by failing to train and/or supervise its officials, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth Amendment and Fourteenth Amendment, when performing

actions related to the placement of dependent children and the investigation and reporting of child neglect and abuse. (This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available).

70.    Defendant COUNTY and all of its policymaking officials, including some or all of DOES 1-10, inclusive, breached their duties and obligations to Plaintiffs by failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the COUNTY DEFENDANTS to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected children and parents, including Plaintiffs.

71.    As described herein, Defendant COUNTY and all of its policymaking officials, including some or all of DOES 1-10, inclusive, knew or should have known that by breaching the above-mentioned duties and obligations, that it was reasonably foreseeable that the DCFS policies, practices, customs, and usages would, and in fact did, cause Plaintiffs to be injured and damaged. The unlawful actions of the the COUNTY DEFENDANTS, who were acting pursuant to the policies, practices, and customs listed above, were the cause-in-fact of Plaintiffs' damages, and the COUNTY's same policies, practices, customs, and usages were a moving factor in causing Plaintiffs' harm. The deliberate indifference of the COUNTY to the foreseeable constitutional harm that was caused by its inadequate policies, procedures, trainings, and customs amounts to a constitutional violation by the County itself under *Monell v. Dept. of Social Services*.

72.    Plaintiffs have been harmed by the constitutional violations caused by the COUNTY's unlawful practices, policies, customs, and inadequate training of its social

workers. As such, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. Plaintiffs have incurred attorneys' fees that they will seek to recover pursuant to 42 U.S.C. section 1988.

## FOURTH CLAIM FOR RELIEF

### NEGLIGENCE

### (By all Plaintiffs against Defendant STEPHANIE STANLEY)

73.    Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as though fully set forth herein.

74.    At all times relevant, STANLEY had a duty not to expose C.M. to harm, abuse, or neglect while caring for him.

75.    STANLEY breached that duty when she caused harm to C.M. by fabricating evidence and allegations of abuse by MOYA, thereby initiating dependency proceedings and causing C.M. to be removed from MOYA's care and restricting MOYA from seeing C.M. for a period of months.

76.    Moreover, at all times relevant, STANLEY had a duty not to interfere with MOYA's parental relationship with C.M. by way of threats, intimidation, deception, or otherwise lying in order to wrongfully deprive MOYA of his relationship with C.M.

77.    STANLEY breached that duty when she intentionally or recklessly lied to the COUNTY DEFENDANTS or otherwise conspired with them to create false allegations of abuse and neglect against MOYA with the sole purpose of disrupting the familial relationship between MOYA and C.M.

78.    As a result of STANLEY's breach, MOYA and C.M. were separated for a period of months and were unable to enjoy the familial relationship they previously shared.

79.    As an actual, proximate, legal, and foreseeable result of STANLEY's breach, MOYA and C.M., and each of them, suffered serious harm, including, but not limited to, severe emotional distress, pain, suffering, anguish, depression, and anxiety.

80.     STANLEY knowingly and willfully acted with malice and oppression and with the intent to harm Plaintiffs in a despicable manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing STANLEY and to deter her and others from such conduct in the future.

## FIFTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (By all Plaintiffs against Defendant STEPHANIE STANLEY)

81.     Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as though fully set forth herein.

82.     As explained above, STANLEY engaged in outrageous conduct against Plaintiffs when she: filed false allegations of abuse and neglect against MOYA in regards to C.M.; lied in multiple statements taken regarding the alleged abuse; unlawfully restricted MOYA and C.M. from contacting each other; and by placing C.M. in harm's way and subjecting him to abuse and neglect.

83.     The conduct of STANLEY was extreme and outrageous and was done with intent to cause or with reckless disregard as to whether it would cause extreme emotional distress to Plaintiffs MOYA and C.M., and each of them.

84.     The legal, proximate, and foreseeable result of the extreme and outrageous conduct of STANLEY did in fact cause extreme and severe emotional distress to MOYA and C.M., resulting in pain, suffering, anguish, paranoia, and anxiety, among other forms of severe and pervasive emotional distress.

85.     STANLEY knowingly and willfully acted with malice and oppression and with the intent to harm Plaintiffs in a despicable manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing STANLEY and to deter her and others from such conduct in the future.

///

///

///

### SIXTH CLAIM FOR RELIEF

**CONVERSION**

**(By MOYA against Defendant STEPHANIE STANLEY)**

86. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as though fully set forth herein.

87. Since approximately February 2024, MOYA has had a right to possess personal property in the form of child support payments from STANLEY that were ordered by the COURT to be paid by STANLEY to MOYA to care for C.M.

88. STANLEY has substantially interfered with MOYA's right to possess this personal property by failing to pay any child support payments to MOYA from February 2024 through the present.

89. MOYA did not consent to this interference in his personal property.

90. MOYA was harmed as a result of STANLEY's interference with personal property that MOYA was legally entitled to.

91. STANLEY's conduct by failing to pay child support payments and purposefully and willfully withholding the same was a substantial factor in causing MOYA's harm.

92. To date, MOYA is owed approximately $50,000.00 in child support by STANLEY. That number continues to accumulate as STANLEY has not paid any child support and continues to refuse to pay any child support to MOYA.

93. Additionally, STANLEY wrongfully converted MOYA's tax return from 2023. The tax return was in the amount of approximately $12,000.00.

94. MOYA had a right to his own tax return.

95. STANLEY substantially interfered with MOYA's right to his tax return when she willfully and maliciously stole it from him and deposited it into her personal bank account.

96. MOYA did not consent to STANLEY's taking of his personal property.

97.     MOYA was harmed as a result of STANLEY's interference with his personal property that MOYA was legally entitled to.

98.     STANLEY's conduct by stealing the tax return and depositing it into her own personal account was a substantial factor in causing MOYA's harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request an entry of judgment in their favor and against Defendants COUNTY OF RIVERSIDE, KAREN WILSON, MAYSOON DAHDUL, DENISE STOOPS, CARLA MARTIN, STEPHANIE ANN STANLEY, and DOES 1-10, inclusive, as follows:

A. For Compensatory damages in the amount to be proven at trial;

B. For general and special damages;

C. For exemplary and punitive damages against the individual defendants in an amount to be proven at trial;

D. For prejudgment interest at the legal rate;

E. For reasonable costs of this suit and attorneys' fees; and

F. For such other further relief as the Court may deem just, proper, and appropriate.

SKAPIK LAW GROUP

Dated: November 25, 2025          By:     */s/ Matthew T. Falkenstein*
Mark J. Skapik
Geralyn L. Skapik
Blair J. Berkley
Matthew T. Falkenstein
Attorneys for Plaintiffs
DEREK MOYA and C.M.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.


SKAPIK LAW GROUP


Dated: November 25, 2025            By:    */s/ Matthew T. Falkenstein*
                                    Mark J. Skapik
                                    Geralyn L. Skapik
                                    Matthew T. Falkenstein
                                    Attorneys for Plaintiffs DEREK
                                    MOYA and C.M., a minor, by and
                                    through his guardian ad litem, Derek
                                    Moya

COMPLAINT